Amanda Harber - AK Bar #1011119
49th State Law
43335 Kalifornsky Beach Road #8
Soldotna, AK 99669
(907) 420-4290
amanda.harber@gmail.com

Maren Lynn Chaloupka (pro hac vice) - Nebraska State Bar # 20864
Chaloupka Law LLC
1906 Broadway
P.O. Box 1724
Scottsbluff, NE  69363-1724
(308) 270-5091
mlc@chaloupkalaw.net

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ERICA ELISOFF,<br><br>                          Plaintiff,<br><br>vs.<br><br>DETECTIVE LUNDQUIST, in his individual and official capacities; SERGEANT BRONSEN, in his individual and official capacities; CITY OF JUNEAU, an Alaska political subdivision; and BLAISE BELLOWS, M.D., in her individual and official capacities,<br><br>                          Defendants. | Case No. 1:23-cv-00013-HRH<br><br>**COMPLAINT, JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL** |

Erica Elisoff, Plaintiff in the above-captioned matter, by and through her counsel of record, for her cause of action against Defendants, states as follows:

**PARTIES, VENUE AND JURISDICTION**

1.

ERICA is a citizen and resident of Anchorage, Alaska. She is Native Alaskan.

2.

Detective LUNDQUIST is a law enforcement officer of Juneau Police Department. He is sued in his individual and official capacities. Similarly, SERGEANT BRONSEN is a law enforcement officer of the Juneau Police Department; he, too, is sued in his individual and official capacities. Their actions were, at all relevant times, in the course and scope of their employment with the Juneau Police Department and under color of law. They are employees and agents of Defendant City of Juneau ("CITY"), an Alaska political subdivision.

3.

BELLOWS is a medical doctor who, at all relevant times, practiced medicine in Juneau, Alaska, at Bartlett Regional Hospital. She is sued in her individual and official capacities as a co-conspirator with LUNDQUIST and BRONSEN.

4.

The events at issue occurred in Juneau, Alaska. Venue and jurisdiction are proper in this case.

**FACTUAL BACKGROUND**

5.

CITY has a responsibility to set and enforce policies, and train its officers in, the limits of physically invasive searches.

6.

Searches involving the exploration of body cavities are dehumanizing and humiliating.

7.

A forced search of the body cavities creates a live risk of traumatizing the person

who is searched.

8.

When radiologic imaging has failed to reveal abnormalities in the body cavity, the likelihood of finding contraband in a body cavity through a digital search is marginal.

9.

On October 30, 2020, ERICA arrived by commercial air service at the Juneau International Airport, in the company of a traveling companion. Their flight arrived at about 5:00 p.m. Upon retrieving their luggage, ERICA and her companion were confronted by LUNDQUIST and BRONSEN.

10.

LUNDQUIST and BRONSEN explained that they had received a "tip" that ERICA and her companion were trafficking narcotics in their body cavities, which both women denied.

11.

LUNDQUIST and BRONSEN searched ERICA's carry-on bag, and found no contraband. They did not ask to search any of ERICA's checked bags.

12.

LUNDQUIST and BRONSEN did not have probable cause to arrest ERICA and her travel companion.

13.

LUNDQUIST and BRONSEN transported the women to the Juneau Police Department and placed in a cement holding cell.

14.

There was no toilet in the holding cell. The temperature was extremely cold.

ERICA's coat, shoes and phone were taken from her, and she was not given a blanket. ERICA asked to see the warrant supporting her detention, to no avail because there was no warrant.

15.

When ERICA needed to use a restroom, BRONSEN tossed a bucket into the cell, with no toilet paper.

16.

Neither woman displayed any signs of drug toxicity while they were detained in the holding cell.

17.

Neither woman presented a threat to the safety and security of the holding cell, or to the remainder of the police station.

18.

No measures were underway to transfer either woman to the general jail population.

19.

No bond was set for either woman. Neither woman was given an opportunity to post bond and discharge from custody.

20.

At 11:05 p.m., a law enforcement officer working with LUNDQUIST and BRONSEN applied for, and received, a search warrant. The warrant specified the following procedure for searching for drugs inside ERICA's body:

> Transportation by law enforcement to a medical facility where qualified medical personnel will conduct internal body scans using non-invasive

technology such as X-ray or cat scan, to determine the presence of foreign objects suspected to be concealed controlled substances.

> a) if a foreign object is detected, medical personnel will determine necessary removal procedures.
>
> b) if any type of removal beyond natural passing of the object with chemical aid (i.e. laxatives) is recommended, an additional warrant request is required.

At the same time, the officers applied for, and received, an identical warrant to search for drugs in the body of ERICA's traveling companion.

21.

LUNDQUIST and BRONSEN transported both women to Bartlett Regional Medical Center, arriving at 12:32 a.m. The women had now been in custody (albeit not under arrest) since shortly after 5:00 p.m. During that time, they had not been allowed to use the phone or a bathroom, they had been given no food and they had grown extremely chilled in the cold cell with no shoes or coats. The physician who encountered ERICA at the hospital was Defendant BELLOWS.

22.

LUNDQUIST and BRONSEN advised BELLOWS that "one of [ERICA's] friends who was also arrested with her had over 100 gm of heroin and methamphetamine concealed in a condom with some Saran wrap in her vagina." This was patently false.

23.

At the hospital, just as in the police station, neither ERICA nor her travel companion were exhibiting any signs of drug toxicity. Their vital signs were normal, other than that ERICA's temperature was beginning to drop. This was all known to BELLOWS.

24.

At 1:00 a.m., BELLOWS directed ERICA to disrobe and don a hospital gown. At 1:40 a.m., hospital personnel transported ERICA by wheelchair (with law enforcement escort) to radiology, where an X-ray confirmed "no acute abnormality, IUD noted in the pelvis. Otherwise, no radiopaque foreign body." This finding was communicated promptly to BELLOWS, LUNDQUIST and BRONSEN.

25.

There was no reason for BELLOWS to question the accuracy of the radiology report.

26.

Nor was there reason for LUNDQUIST and BRONSEN to question the accuracy of the radiology report.

27.

LUNDQUIST and BRONSEN signed the return on the search warrant at 1:48 p.m. Per the terms of the search warrant, the medical encounter should have ended.

28.

LUNDQUIST and BRONSEN did not, themselves or through delegation to other law enforcement officers, return to the issuing court to request a new search warrant for an invasive body cavity search.

29.

ERICA did not know that the issuing court had placed limits on the search of her body in the search warrant. During this entire encounter, ERICA had continued to ask Defendants to show her the search warrant, to no avail. Had Defendants shown her the search warrant, ERICA would have known that a second warrant would be required for an invasive examination, and that issuance of a warrant for an invasive examination was

contingent upon radiologic identification of a foreign object in her body cavity.

30.

Between 1:48 a.m. and 1:57 a.m., Defendants, and each of them, coerced ERICA into "consenting" to a digital examination of her vagina and rectum.

31.

Nine minutes was not long enough for a "contraband watch," to monitor ERICA for passing or removing whatever contraband Defendants claimed that ERICA was storing in her body cavity.

32.

By that time, ERICA already had been in custody since 5:00 p.m. and had not passed or removed anything from her body cavity.

33.

ERICA did not want a digital examination of her vagina and rectum. But Defendants, and each of them, told ERICA that if she did not consent to the search now, she would be arrested for interfering with a law enforcement investigation.

34.

By that time (almost 2:00 a.m.), ERICA had been in custody for nearly eight hours. She had spent nearly all of that time in an extremely cold holding cell, and she feared that is where she would be returned to upon being arrested for interfering with a law enforcement investigation. Her requests to see a search warrant had been refused. She had not been allowed to call an attorney.

35.

ERICA's signature on the consent form was not borne of actual consent. It was the

result of duress, coercion and threats.

36.

After ERICA signed the consent form under coercion, BELLOWS performed a digital examination of her vagina and rectum.

37.

BELLOWS' digital examination of ERICA's vagina and rectum was humiliating and degrading, and caused her emotional distress.

38.

BELLOWS' digital examination was also fruitless: BELLOWS found no contraband in ERICA's vagina or rectum.

39.

Defendants released ERICA from custody. She was never charged with a crime arising from this event. Nor was her travel companion.

40.

ERICA's interests in privacy and security – and in particular the privacy and security of the most private part of her body, her genitals, both their exterior and interior – outweigh society's interest (assuming society has any legitimate interest considering the potential alternatives) – in conducting the digital examination under these circumstances. *See Winston v. Lee,* 470 U.S. 753 (1985).

### FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – LUNDQUIST AND BRONSEN

41.

ERICA had a right under the Constitution of the United States to be free from

unreasonable search and seizure, unreasonable and excessive use of force, unreasonable and excessive infliction of physical and emotional distress, from the abuse of power by law enforcement and to due process by law enforcement professionals.

42.

At all times relevant to this Complaint, LUNDQUIST and BRONSEN were acting under color of law – under the constitutions, statutes, administrative rules, customs, policies and usages of CITY, the State of Alaska and the United States – and had assumed the responsibilities, activities, and rights involved in exercising their roles as members of CITY's professional staff.

43.

LUNDQUIST and BRONSEN acted with deliberate indifference to ERICA's known and recognized constitutional and legal rights to due process and bodily integrity and to be free from excessive force and indifference to her rights. LUNDQUIST and BRONSEN actively participated in the deprivation of ERICA's constitutional rights.

44.

The conduct of LUNDQUIST and BRONSEN, within their duties as a member of CITY's professional law enforcement staff, under color of state law, deprived ERICA of rights, privileges and immunities secured by the United States Constitution. Particularly, ERICA was deprived of her constitutional liberty interest in due process, privacy, bodily security, bodily integrity and in freedom from excessive force and indifference to her rights.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – CITY OF JUNEAU

45.

CITY is charged with the responsibility and duty to protect and serve the public by properly hiring, training and controlling officers under their command, including LUNDQUIST and BRONSEN. This duty includes promulgation and enforcement of rules, regulation and training regarding invasive searches of body cavities.

46.

CITY's duty includes a duty to train its professional law enforcement staff in the proper, improper and abusive use of invasive searches of body cavities. It includes a duty to train its professional law enforcement staff to never search a person's body cavities without probable cause, nor to extend an investigatory detention without legal justification.

47.

CITY failed to promulgate adequate training, rules and regulations relating to excessive force and the abuse of arrest and citation powers, and further failed to instruct and train LUNDQUIST and BRONSEN in the appropriate methods for avoiding inappropriate and abusive use of invasive searches of body cavities, as well as improper detention without legal justification.

48.

CITY established through tacit authorization or explicit instruction a policy or custom of allowing officers to commit abuses of detention powers and invasive searches of body cavities. That policy was enacted and enforced with deliberate indifference in the constitutional rights of persons effected thereby.

49.

CITY failed to properly train and control officers under its command, including

LUNDQUIST and BRONSEN, and failed to ensure compliance with its training and regulations regarding the use of invasive searches of body cavities as well as unlawful detention; that failure has resulted in a policy or custom of inadequate training on those subjects

50.

CITY's custom of failing to properly train and control officers under its command, including LUNDQUIST and BRONSEN, and its failure to ensure compliance with its training and regulations on the use of invasive searches of body cavities as well as unlawful detention, amounts to deliberate indifference to the rights of persons with whom CITY officers come into contact, including the rights of ERICA herein.

51.

CITY's custom and policy of allowing abuse of search, force and detention powers, and CITY's failure to properly train and control officers under its command, including LUNDQUIST and BRONSEN, was so reckless that misconduct involving invasive searches of body cavities was inevitable as of October 30-31, 2020.

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1985 - LUNDQUIST, BRONSEN AND BELLOWS**

52.

Defendants, and each of them, together with other investigative, supervisory and command personnel, together and under the color of state law, reached an understanding, engaged in a course of conduct and otherwise conspired among and between themselves to deprive ERICA of her constitutional rights, and did deprive ERICA of her constitutional rights including their rights: to free association and privacy;, to be free from unreasonable

detention and seizure; to be free from abuse of process; to fair access to the courts; to due process of law; to be free from cruel and unusual punishment without the benefit of conviction beyond a reasonable doubt; and all basic rights of American citizens threatened with criminal sanctions.

53.

The Defendants, together with unnamed coconspirators, committed the overt acts set forth above. This involved the wrongful detention of ERICA. It also included Defendants' coercion of ERICA into "consenting" – a non-consensual consent, to be accurate – to a humiliating and degrading digital search of her vagina and rectum when Defendants knew that they lacked probable cause for the same. It has included the manufacture of false evidence of "consent"; and it included the filing of false, misleading and unreliable reports as part of their "investigation" of unsupported allegations that ERICA was trafficking narcotics in her vagina and rectum, despite the absence of probable cause – an absence of probable cause which was known or which reasonably should have been known to Defendants.

54.

BELLOWS, a private actor, reached a meeting of the minds with LUNDQUIST and BRONSEN, with the objective of searching ERICA's body cavities when there was no probable cause to do so. BELLOWS did not merely acquiesce to LUNDQUIST and BRONSEN: to the contrary, BELLOWS actively assisted in coercing ERICA to sign a consent form; in digitally searching ERICA's body cavities; and in manufacturing false evidence of consent thereafter.

55.

Those acts violated ERICA's constitutionally protected rights. The conspiracy and overt acts are, in fact, continuing in nature and have caused ERICA constitutional deprivations, injuries, psychological harm and damage, detention, humiliation, and loss of freedom. Some of those losses continue to this day.

**PUNITIVE DAMAGES**

56.

In addition to compensatory damages, ERICA hereby makes a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants, to include violation of ERICA's civil rights, as alleged herein. The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and callous and wanton disregard for the law and for the lives and safety of others, including ERICA. Defendants committed the acts and omissions alleged herein and subjected ERICA to improper treatment. Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

57.

The recovery of punitive damages is permitted under the federal civil rights statutes for reckless and callous indifference to the federally protected rights of others, and is thus appropriate in this case. This instance of reckless and callous indifference to ERICA's privacy and dignity, and to her constitutional rights, should be punished through the imposition of punitive damages so as to make an example of conduct that will not be tolerated.

## ATTORNEY'S FEES

58.

As a result of defendants' actions as alleged herein, ERICA was required to retain the services of attorneys and are entitled to a reasonable amount for attorney's fee pursuant to 42 U.S.C. § 1988 for those violations covered by the Civil Rights Act.

## DAMAGES

59.

The acts and omissions of Defendants as set forth above have resulted in damages to ERICA, in these particulars:

A. Compensatory damages in an amount to be proven at trial, for ERICA's mental pain and suffering, anguish and inconvenience;

B. Compensatory damages for the violation of ERICA's rights under the federal and state Constitutions;

D. Punitive damages to punish and deter the reprehensible conduct set forth in this Complaint;

E. Attorneys' fees and expenses available under 42 U.S.C. § 1988; and

F. The costs of this action and such other and further relief as this Court deems equitable and proper.

**WHEREFORE,** Plaintiff prays for judgment against the defendants as follows:

A. Plaintiff prays for damages in an amount which will fairly and justly compensate for their injuries and the violation of her civil rights, and other consequential damages flowing from the violations and torts set forth herein;

B. Punitive damages in an amount sufficient to adequately punish Defendants

and to deter future conduct of the type alleged in this Complaint;

C.       For attorneys' fees pursuant to 42 U.S.C. § 1988; and

D.       For the costs of this action and for such other and further relief as this Court deems equitable and proper.

### JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

ERICA requests that this matter be tried to a jury in Juneau, Alaska.

ERICA ELISOFF, Plaintiff,

By: /s/ *Amanda Harber*
   Amanda Harber - AK Bar #1011119
49th State Law
43335 Kalifornsky Beach Road #8
Soldotna, AK 99669
(907) 420-4290
amanda.harber@gmail.com

-AND-

Maren Lynn Chaloupka (*pro hac vice*) - Nebraska State Bar # 20864
Chaloupka Law LLC
1906 Broadway
P.O. Box 1724
Scottsbluff, NE 69363-1724
(308) 270-5091
mlc@chaloupkalaw.net